**Delbert McCONNELL, Appellee,**

v.

**TOWN CLERK OF TIPTON, Oklahoma, and the Board of Trustees of the Town of Tipton, Oklahoma, Appellants.**

No. 61008.

Supreme Court of Oklahoma.

July 23, 1985.

John P. Kent, Frederick, for appellants.

Clyde H. Amyx, II, Frederick, for appellee.

DOOLIN, Vice Chief Justice.

This dispute arose from Appellee's application to Appellants (hereinafter, "Town") for a building permit for the purpose of constructing a hay barn on Appellee's lot inside the town limits of Tipton, Oklahoma.

The application was heard before a special meeting of the Town Board of Trustees on May 17, 1983, at which hearing Appellee (hereinafter, "Landowner") was present, along with many residents of the community who were interested in the outcome, including proponents and opponents of the proposed construction. During the course of the hearing, the Town Trustees heard testimony from a health inspector for the Oklahoma State Department of Health, assigned to Tillman County, and from the Chief of the Tipton Volunteer Fire Department.

The health inspector told the Trustees the barn would, in his opinion, harbor rats, mice and other vermin and had the potential of becoming a health hazard and nuisance to nearby residents, and he therefore recommended the application be denied.

The Fire Chief expressed the opinion that a hay barn of the type and in the location proposed by Landowner would constitute a fire hazard which would exceed the limited capabilities of the Tipton Fire Department, and he too recommended denial of Landowner's application.

Thereafter, Landowner was given the opportunity to defend his application and voiced his opinion that he should be entitled, by virtue of ownership, to use his property any way he saw fit.

Following discussion among the Trustees and various other persons present, the Board voted unanimously to deny Landowner's application for a permit, whereupon he filed an action in the District Court of Tillman County, seeking a writ of Mandamus to compel the Town Trustees to issue the permit. A hearing on the merits was held on July 13, 1983, during which arguments and testimony very similar to those presented during the application hearing were presented to the court.

At the close of the trial, the court found "the city acted absolutely in good faith and decided that on two grounds the barn should not be built under the building permit from the city on account of the fire hazard and hazard to the health of the public." The court then focused on what it perceived as the Town's lack of adequate procedures for the issuance of building permits. The court held this procedural deficiency outweighed the risk to public health and safety and issued the Writ of Mandamus upon Landowner's promise to install a sprinkler system and to treat the barn for vermin. .

This appeal was then lodged by the Town.

The Court of Appeals issued its unpublished opinion on November 27, 1983, affirming the issuance of Mandamus. We now vacate that opinion and reverse the decision of the trial court.

The starting point of our discussion is to address the issue of whether a writ of mandamus was a proper remedy for Landowner under the facts and circumstances of this case.

Mandamus from a district court to a town board of trustees is governed by 12 O.S.1981, § 1451, which says:

> The writ of mandamus may be issued by ... the district court ... to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specifically enjoins as a duty, resulting from an office, trust or station; but though it may require an inferior tribunal to exercise its judgment or proceed to the discharge of its function, it cannot control judicial discretion.

There is some debate as to whether in issuing building permits the Town Clerk of Tipton acts in a strictly ministerial capacity or in a discretionary manner, but we find it is unnecessary to make such a distinction in order to resolve the issue at hand.

■ We have long adhered to the position that there are, in fact, two instances where mandamus may be issued by a district court to a public officer or board:

> 1. Where the act sought to be mandated is purely ministerial in that the officer or board has a non-discretionary duty, imposed by law, to act when properly requested to do so,[1] and;
> 2. Where the act sought to be mandated requires the exercise of judgment or discretion, but the board or officer exercising such discretion has acted arbitrarily or fraudulently.[2]

While the latter application of mandamus is perhaps more broad than that of its common-law ancestor, it is undeniably necessary because no adequate remedy at law exists to enable a person aggrieved by the wrongful, discretionary act of a public officer or board to seek judicial review of such an act.

■ Even though an action for mandamus was properly brought by Landowner in the instant case, the trial court erred in its findings of fact and conclusions of law in deciding to issue the writ.

The remaining issue to be addressed is: in a proceeding for mandamus, under what circumstances may a district court reverse a municipality's legislative decisions as to land-use and the construction of buildings within its boundaries?

The general authority for municipal control of construction and land-use is found at 11 O.S.1981, § 43–101, which says:

> For the purpose of promoting health, safety, morals or the general welfare of the community, a municipal governing body may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes.

The effect of this statute was addressed in *Keaton v. City of Oklahoma City,*[3] where it was decided:

> Municipalities are authorized to enact zoning ordinances and when the legislative branch of the municipal government has acted in a particular case, its expressed judgment on the subject will not be overridden by the judiciary unless such judgment is unreasonable, arbitrary or constitutes an unequal exercise of police power.

---

1. *Jones v. Hanger,* 208 Okl. 628, 258 P.2d 176 (1953).

2. *Nixon v. Roberts,* 420 P.2d 898 (Okl.1966); *Adair County Excise Board v. Board of County Commissioners of Adair County,* 438 P.2d 484 (Okl.1968). and see generally, 55 CJS Mandamus § 124 b. (1) and 52 Am.Jur.2d, Mandamus § 79.

3. 187 Okl. 593, 102 P.2d 938 (1940).

**482**

More recently, we have addressed the issue of judicial review of municipal actions in *Utility Supply Co. v. City of Broken Arrow,*[4] where we enlarged the *Keaton* rule and held:

> The powers of a city and how it should conduct its affairs are legislative functions; the only justiciable question is whether the authority granted or the exercise of it may be denominated as arbitrary and unreasonable.

Again, this Court addressed the issue in *Red River Construction Co. v. City of Norman,*[5] when we held:

> A municipal corporation may act legislatively at any time its interest is properly concerned and its legislative judgment of necessity to act is final and conclusive, subject only to reasonableness under the rule of law which may be judicially applied to its enactment or ordinances and the enforcement of them.

■ These rulings demonstrate a clear and uninterrupted pattern of decisions by this Court to keep judicial intermeddling with the legislative functions of municipalities at a minimum. The only legitimate basis for interference by the courts is when the municipality has acted unreasonable, arbitrarily or in such a way as to constitute a violation of the constitutional guarantees of equal protection or due process.

Each of the above-mentioned, impermissable actions focuses on the reasonableness of the municipality's decision in any given case. Unreasonable acts by cities have been defined in *Farmer v. City of Sapulpa,*[6] as acts which are, "manifestly unreasonable and oppressive, unwarrantedly invade private rights, clearly transcend the police power given them, or infringe upon the rights secured by fundamental law."

■ We find from the record in this case that the Town did not act unreasonably; indeed, faced with the testimony of the health inspector and the Fire Chief, it is difficult to conceive how the Town could have reasonably acted otherwise.

■ During the hearing on Mandamus, witnesses on behalf of Landowner testified the hazards warned of could perhaps be controlled. The trial judge then took it upon himself to go to Tipton to view the site of the proposed barn. While in most instances, such thoroughness is commendable, in passing on the validity of a municipal resolution, the court may not test the weight and sufficiency of the facts which sustain the conclusion of the legislative body.[7]

■ In the instant case, the court went beyond its mandate of reviewing the reasonableness of the Town's action and admitted and even searched for additional facts which were not presented to the Town Trustees and which formed no part of the Town's legislative decision. While a trial court may admit evidence which tends to prove or disprove the reasonableness of a municipality's legislative decision, it cannot extend its inquiry to include new and entirely independent facts, and then use such new material to construct an essentially legislative decision to be substituted for that of the municipal government.

Even after all this extensive fact-finding, at the conclusion of the hearing, the trial court specifically agreed with the findings and conclusions of the Town Trustees, when the court delivered the above-quoted holding from the bench. The court's holding that the Town "acted absolutely in good faith" in this matter shows clearly that the court found no unreasonableness, arbitrariness or capriciousness in the Town's action in denying Landowner a building permit. It was not for any of these reasons Mandamus was issued; rather the court held lack of procedure governing building permits was the sole, determinative factor which entitled Landowner to a Writ of Mandamus.

---

**4.** 539 P.2d 740 (Okl.1975).

**5.** 624 P.2d 1064 (Okl.1981).

**6.** 645 P.2d 518 (Okl.1982).

**7.** *Utility Supply Co. v. City of Broken Arrow,* 539 P.2d at 743.

Without ruling on the dubious and unsubstantiated basis for the court's legal conclusion, we find no factual support in the record for this holding. The Code of Ordinances for the Town of Tipton, Oklahoma was admitted as an exhibit and examined by the trial court and the validity of this Code of Ordinances is not challenged. A review of the Code shows the Town formalized its statutory power to regulate building within the town limits by enacting the language of 11 O.S.1981, § 43–101, verbatim as its own Ordinance 16–15.1. Further, in Ordinance 4–10, there is an extensive set of rules governing the procedures for application and issuance of building permits. Subsection 13 of that ordinance further provides:

> Appeals from any aggrieved person concerning a decision of the Town Clerk, relative to the granting of Building Permits, shall be taken to the Town Board of Trustees, who shall act as a Board of Appeals for the Town of Tipton, Oklahoma.

Which is exactly the procedure followed by Landowner in the instant case.

■ The trial court erred in holding no procedure existed within the Town's ordinances governing application for a building permit and for a hearing thereon. Further, it appears both Landowner and Town followed the application procedures as written, and based upon all the relevant information available the Board of Trustees exercised its legislative discretion in a reasonable and prudent manner. Even if, for the sake of argument, there had been a deficiency in the Town's building permit procedures, we find no rule of law which says this is a sufficient ground for overturning the Town's decision, so long as an applicant's rights of due process and equal protection are not violated.

Because the trial court erred in its finding that no procedure existed governing building permits and because there was no finding the Town acted unreasonably, arbitrarily or capriciously, the trial court had no grounds to superimpose its independent judgment upon that of the Town's legislative body.

The opinion of the Court of Appeals is therefore VACATED and the judgment of the trial court is REVERSED.

HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON, KAUGER, and SUMMERS, JJ., concur.

SIMMS, C.J., concurs in judgment.