KENT v. CITY OF OKLAHOMA CITY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:KENT v. CITY OF OKLAHOMA CITY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 KENT v. CITY OF OKLAHOMA CITY
2020 OK CIV APP 21
Case Number: 117206
Decided: 03/25/2020
Mandate Issued: 06/17/2020
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2020 OK CIV APP 21, __ P.3d __

 

GREG KENT, AMY KENT, LEISHA KNIGHT, RICHARD KNIGHT, LOLA KNIGHT, SHELLY KNIGHT, VICKI WALLACE, LIBBY DAVIS, CHARLES DAVIS, Petitioners/Appellants,
v.
THE CITY OF OKLAHOMA CITY, Oklahoma, a Municipality, et al., Respondents/Appellees,
and
KILPATRICK AT EASTERN, LLC, an Oklahoma limited liability company, Intervenor.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE TREVOR PEMBERTON, TRIAL JUDGE

AFFIRMED

R. Robyn Assaf, Oklahoma City, Oklahoma and Lana J. Tyree, Oklahoma City, Oklahoma, for Petitioners/Appellants

Daniel T. Brummitt, ASSISTANT MUNICIPAL COUNSELOR, Oklahoma City, Oklahoma, for Respondents/Appellees

Paul Lefebvre, David R. Box, John Michael Williams, Michael D. O'Neal, WILLIAMS, BOX, FORSHEE & BULLARD, P.C., Oklahoma City, Oklahoma, for Intervenor

P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Petitioners/Appellants (Petitioners) seek review of trial court orders that denied their petition for a writ of mandamus or prohibition against the City of Oklahoma City (City), and denied Petitioners' motion for leave to amend the petition. Petitioners also challenge trial court's decisions allowing property developers Kilpatrick at Eastern, LLC (Kilpatrick), to intervene in this action, and granting City's motion to consolidate this proceeding with a related case in the court below. On review of the record, the parties' briefs and the applicable law, we find no reversible error in the trial court's decisions and affirm.

BACKGROUND

¶2 In March 2017, City approved Kilpatrick's application for a Planned Unit Development District (PUD-1630) changing the zoning classification of approximately 110 acres (the property) located in northeast Oklahoma City, at the corner of Northeast 122nd Street and North Eastern Avenue, just south of the Kilpatrick Turnpike, and adjacent to or near property owned by Petitioners. Kilpatrick, a local developer and the property's owner, had filed the PUD-1630 application in December 2016, asking City to rezone the property from an agricultural, residential, and general office classification, to mixed-use office and commercial. According to the application, the property was partially developed with a paved street, water, and sewer but was otherwise vacant. Kilpatrick intended to use the property for general commercial office space, mixed-use retail space, and a large multi-screen indoor movie theater.

¶3 The PUD-1630 application included in the record indicates that, of the 110-acre area, approximately 56 acres are for office space and 20 acres are for commercial space. About 30 acres are devoted to open, greenbelt areas to buffer the office or commercial space from nearby residential properties and an equestrian center located south of Northeast 122nd Street.

¶4 City ultimately approved PUD-1630 at its March 28, 2017 meeting, following review and two meetings of the City Planning Commission in January and February of 2017. Neither planning commission meeting was attended by any protestors.[1] By the time of City Council's March 28, 2017 meeting, however, several hundred residents living within several square miles around PUD-1630 had signed a petition in opposition to it, asserting it presented a "drastic departure" from the current use of the property. A written objection was presented on behalf of homeowners and other individuals living in the large area that Petitioners referred to as "Urban Low Intensity" (ULI) based on the area's general typology in Oklahoma City's Comprehensive Master Plan, known as "PlanOKC," which City adopted in 2015. [2] At its March 28 meeting, however, City rejected the protests, approved PUD-1630, and adopted Ordinance No. 25,599 reclassifying the property accordingly.

¶5 City's approval of PUD-1630 prompted Petitioners to file a petition for "mandamus or prohibition" (petition for mandamus) against City in April 2017 (amended in June 2017). The petition requested a peremptory writ of mandamus based on City's alleged "non-discretionary, mandatory duty to the residents and registered voters" living in the area where Petitioners reside "to comply fully and completely" with Oklahoma statutes, City ordinances, and "critically important . . . PlanOKC." Petitioners also complained that City had rushed through the process for PUD-1630, and that City had negligently failed to give sufficient notice to parties interested in the project. They also suggested that City had improperly colluded with Kilpatrick, principally by entering into a "joint defense agreement" with counsel for Kilpatrick after the litigation was filed. They asserted that such an arrangement was illegal and void.

¶6 Petitioners attached more than 300 pages of exhibits to their petition for mandamus, not including "PlanOKC" itself, which Petitioners "incorporated by reference" by referring to its location online, at "www.okc.gov." The gist of Petitioners' requested relief was a court order requiring City to invalidate its approval of PUD-1630 due to City's use of an allegedly unfair, "corrupt," "biased," and arbitrary and capricious hearing process and methods in order to reach a decision in breach of City's duty to obey the law.

¶7 Kilpatrick requested to intervene, which the trial court allowed. The court also granted City's motion to consolidate this action with Oklahoma County District Court Case No. CV-2017-955, an injunction action against City, also by homeowners, on grounds similar to those listed in Petitioners' mandamus action. The latter case was based primarily on the claim that City's approval of PUD-1630 was without adequate notice to individuals entitled to notice, in violation of their right to due process.

¶8 Kilpatrick and City filed answers, followed by motions for summary judgment, challenging, inter alia, (1) the propriety of Petitioners' use of a mandamus action against City to invalidate a zoning action; and (2) the claim, by both Petitioners and plaintiffs in the consolidated case, of inadequate notice concerning City's approval of PUD-1630. The trial court ultimately found that notice was given as required by Oklahoma City Municipal Code § 59-4150.3, and granted summary judgment in favor of City and Kilpatrick on the adequacy of notice provided to Petitioners and plaintiffs in the injunction case. No party has appealed from that determination.[3]

 

¶9 Petitioners moved to strike the answers filed by City and Kilpatrick as improper pleadings in a mandamus action. The court granted Petitioners' motion to strike pending its decision on Petitioners' petition.

 

¶10 During a pre-trial conference, Petitioners requested the court to rule on their request for a peremptory writ of mandamus. The court denied the writ and dismissed the petition, finding that mandamus was an extraordinary remedy to which Petitioners were not entitled because they had not shown City had a non-discretionary duty to Petitioners to deny Kilpatrick's rezoning request. The court also found that Petitioners had an alternate legal remedy available to them, and noted particularly the injunction action with which Petitioners' mandamus case was consolidated. In a separate order, the court denied a motion by Petitioners to file a second amended petition, which Petitioners had claimed would support additional grounds for relief against City.

¶11 Petitioners filed this appeal.

STANDARD OF REVIEW

¶12 "Generally, an adjudication determining the proper legal procedure for a particular controversy presents an issue of law, and is reviewed by a non-deferential de novo standard." Christian v. Gray, 2003 OK 10, ¶ 40, 65 P.3d 591. At the same time, the Supreme Court has held that in a mandamus proceeding, the party aggrieved by the trial court's decision has the burden to "show on appeal that the trial court abused its discretion in declining to award relief." Clay v. Indep. Sch. Dist. No. 1 of Tulsa County, 1997 OK 13, ¶ 31, 935 P.2d 294. An abused judicial discretion may be found in either an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. Christian, 2003 OK 10 at ¶ 43.

¶13 The Court has also held, in reversing a trial court's grant of mandamus, that there has been "a clear and uninterrupted pattern of decisions by this Court to keep judicial intermeddling with the legislative functions of municipalities at a minimum," and that "the only legitimate basis for interference by the courts is when the municipality has acted unreasonable [sic], arbitrarily or in such a way as to constitute a violation of the constitutional guarantees of equal protection or due process." McConnell v. Town Clerk of Tipton, 1985 OK 61, ¶ 21, 704 P.2d 479. "[A municipality's] acts will not meet with judicial interference unless they are manifestly unreasonable and oppressive, unwarrantedly invade private rights, clearly transcend the police powers given to them, or infringe upon the rights secured by fundamental law." Farmer v. City of Sapulpa, 1982 OK 58, ¶ 12, 645 P.2d 518 (quoting Utility Supply Co., Inc. v. City of Broken Arrow, 1975 OK 106,
¶ 14, 539 P.2d 740).

ANALYSIS

I. The Trial Court Correctly Denied a Writ of Mandamus 

¶14 The remedy of mandamus in Oklahoma is governed by 12 O.S.2011 §§ 1451 through 1462. These provisions recognize a court's authority to issue a writ "to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station." State Highway Comm'n v. Green-Boots Const. Co., 1947 OK 221, ¶ 12, 187 P.2d 209. To obtain mandamus relief, a petitioner must demonstrate they meet the requirements of the following, five-factor test:

(1) the [petitioner] has no plain and adequate remedy in the ordinary course of the law; (2) the [petitioner] possesses a clear legal right to the relief sought; (3) the respondent has a plain legal duty regarding the relief sought; (4) the respondent has refused to perform that duty; and (5) the respondent's duty does not involve the exercise of discretion.

Miller Dollarhide, P.C. v. Tal, 2006 OK 27, ¶ 10, 174 P.3d 559 (footnote omitted). However a court "may also issue the writ to correct an arbitrary abuse of discretion." Id.

¶15 In this appeal, the gist of Petitioners' argument is that City had a plain legal duty to deny PUD-1630 because it allowed a zoning change that Petitioners claim did not comply with PlanOKC and therefore violated 11 O.S. § 43-103. Pursuant to § 43-103, "Municipal regulations as to buildings, structures and land shall be made in accordance with a comprehensive plan. . . ." Petitioners interpret the statute as imposing a mandatory duty, enforceable by writ, that "where a long-range plan is adopted, it be followed." They also argue City violated state law when it adopted Municipal Code § 59-3150.2, which they claim allows "PlanOKC to be used as merely a guideline or tool, as opposed to the statutory mandate that the adopted long-range plan be followed." Because PUD-1630 included a zoning change, it did not strictly adhere to PlanOKC as adopted, and Petitioners urge that City had no choice but to deny it. Thus, in addition to their rights and City's obligations under the zoning and planning statutes that Petitioners cite, the "plain legal right" that Petitioners claim, appears to lie within the provisions of PlanOKC.

¶16 Petitioners' argument presents several problems. First, the record designated by Petitioners does not make clear what provision(s) of PlanOKC on which they rely as the source of their "plain legal right" or City's "plain legal duty." As noted above, Petitioners simply incorporated PlanOKC by referring generally to a City Internet website, and gave no direction as to where, within the document, to find the information relevant to their claim.

¶17 Petitioners also have a strained interpretation of 11 O.S.2011 § 43-103. While the statute does state that municipal regulations must be "in accordance with" a comprehensive plan, it clearly does not dictate the regulations a municipality must or must not adopt, or the manner in which a city decides how to accomplish any of multiple objectives set forth in the provision.[4] Section 43-103 also states, unambiguously, that a municipality's "governing body shall provide the manner in which regulations, restrictions and district boundaries shall be determined, established and enforced, and amended, supplemented or changed."

¶18 There also is no support in the record for Petitioners' reference to City's Municipal Code § 59-3150.2 as violating state law because it allows PlanOKC to be used only as a "guideline." The ordinance itself contains no such language.[5] However, even if we assume that the Municipal Code at some point contains such a provision, Petitioners' argument ignores the language of 11 O.S.2011 §§ 47-106 and 47-107. Those provisions specifically concern comprehensive municipal plans adopted by "cities with populations over 200,000." Pursuant to § 47-107 (emphasis added), the plan "shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the municipality and its environs . . . ." Moreover, § 47-106 specifically contemplates that a city's planning commission "may amend, extend, or add to the plan from time to time."

¶19 Petitioners also are mistaken in their claim that they had no other remedy in the "ordinary course of the law" than a writ of mandamus. Their argument on this issue appears focused on City's alleged failure to employ a fair process in its approval of PUD-1630 by failing to provide Petitioners with notice and an opportunity to challenge the proposed change. While there is no question that City has a clear legal duty to give notice as prescribed by City's zoning ordinances, it is undisputed that the question of notice was litigated and decided in the trial court, and has not been appealed. No Petitioners appeared to protest PUD-1630 when it was heard before City's Planning Commission despite the fact that adequate notice had been given.

¶20 Petitioners further argue the trial court erred in finding that they had an adequate remedy in the form of an injunction as exemplified by the relief sought by plaintiffs in the consolidated case. They contend their mandamus action includes issues broader in scope than the facts of the injunction case, which, they say, was limited to only the "facts arising from and related to the singular approval of PUD-1630."[6] This broader scope of facts apparently concerns allegations by Petitioners to the effect that City has repeatedly engaged in collusion with Kilpatrick's counsel or has engaged in other improper acts, as to which discovery would be needed.

¶21 Petitioners then suggest, without citation to authority, that an injunction action does not allow for the use of discovery procedures that would allow them to pursue their theories. This is simply wrong. See, e.g., Tibbits v. Miller, 1900 OK 45, 60 P. 95 (where facts lie in the knowledge of the defendant, and discovery is sought, the plaintiff is permitted to state that he is informed and believes that a fact is true and the request for injunction should not be dismissed). The Oklahoma Discovery Code provides for discovery in all suits of a civil nature in Oklahoma courts. 12 O.S.2011 § 3224. "The only exception to this principle is where the Legislature has explicitly exempted a certain type of special proceeding from the scope of the Code." Sunderland v. Zimmerman, 2019 OK CIV APP 27, ¶ 17, 441 P.3d 179. We know of no provision whereby injunction proceedings are exempted from discovery procedures, and reject Petitioners' argument for this reason as well.[7]

 

¶22 Finally, even if we were to determine that an injunction is not an adequate, alternative remedy for Petitioners, their mandamus quest would still fail, because Petitioners have not shown that City's alleged breach of duty in this matter either "did not involve the exercise of discretion" or that City abused its discretion in reaching its decision.

 

¶23 The trial court order cited Midcontinent Life Ins. Co. v. City of Oklahoma City, 1985 OK 41, ¶ 9, 701 P.2d 412, holding that municipal zoning is a legislative function which requires the exercise of legislative judgment, and such decisions are afforded the presumption of validity by the courts when challenged. In Kelly v. City of Bethany, 1978 OK 163, ¶ 14, 588 P.2d 567, the Court recognized that a city council's approval of a plat and acceptance of an offer of dedication within the plat is "discretionary and not subject to mandamus," and that "the expedience or wisdom of this acceptance is a matter for municipal legislative determination with which courts are not authorized to interfere." Id., ¶ 15 (emphasis added). The Court in Kelly cited with approval to Dorris v. Hawk, 1956 OK 19, 292 P.2d 417, where the Court refused to enjoin or invalidate a city commission's "legislative determination" to accept a dedication and open a street that violated city zoning ordinances, holding the commission's decision "rest[ed] in the discretion of the municipal authorities." Id., ¶¶ 0 and 4; see also 8 McQuillin Mun. Corp. § 25:102 (3d ed.)("Rezoning . . . is subject to the legislative discretion of the city council or other zoning authority, and courts will not interfere therewith except for abuse clear beyond dispute.").

¶24 Just as a decision to accept a plat and offer of dedication lies within the discretion of municipal authorities, the decision to approve a PUD application that includes rezoning a particular area is a legislative and therefore discretionary act by a municipality's governing body. Title 11 O.S.2011 § 43-110 authorizes municipal governing bodies to establish PUD requirements and procedures "in a zoning ordinance," and defines a PUD as including "cluster housing, planned residential and nonresidential development, community unit plan, and other zoning requirements." (Emphasis added.) We find no clear, mandatory, non-discretionary duty, explicitly or impliedly, within the statutory provisions cited by Petitioners or within PlanOKC itself that would require a state court to order the invalidation of a city's legislative approval of a PUD application.

¶25 Accordingly, we reject Petitioners' claim that City's approval of PUD-1630 so far departed from state law and/or the "Urban Low Intensity" area designation in PlanOKC that it committed a breach of a mandatory duty between City and Petitioners. It is undisputed that PUD-1630 involves a 110-acre tract of land in what appears to be a relatively vacant area located at the northeast corner of Northeast 122nd Street and Eastern Avenue, just south of the Kilpatrick Turnpike. As indicated above, Petitioners have used the description of the area as "Urban Low Intensity," or ULI. This is a land use typology designation from PlanOKC for a large area situated between US Highway 77 on the west, I-35 on the east, I-44 on the south, and Memorial Road on the north. City's Planning Commission "Staff Report" for PUD-1630, attached as an exhibit to Petitioners' petition, reflects that the site "is currently zoned under PUD-1156 which allows for office and residential uses," that a private road system had already been constructed, and that PUD-1630 planned to use the existing infrastructure.

¶26 The Report describes the ULI typology designation as applying to "the least intensively developed areas of the city that still receive urban water, sewer, police, park and fire services," and cautions that "development in this area should provide horizontal integration of land uses, connectivity within and between individual developments, and design that facilitates pedestrian and bicycle transportation." The Report notes that immediately to the south is a "recently approved PUD-1617 for Oklahoma Christian Academy," while immediately to the north is "Kilpatrick Turnpike frontage."

¶27 The Report devotes three pages to evaluating the proposed PUD-1630 in comparison to PlanOKC, and delineates the ways in which the PUD either meets or "commits to meeting" current requirements or recommendations for PlanOKC's "Land Use Typology Area (LUTA)" map's ULI designations. The Report recommends approval of PUD-1630, but cautions that "determination of conformance with policies contained in the comprehensive plan is the purview of the Planning Commission," which may consider other relevant information than the technical evaluation appearing in the Report.

¶28 As noted above, the Planning Commission recommended approval at a public hearing where no protestors appeared. By the time the City Council took up the matter, numerous signatures had been gathered to support a petition protesting rezoning, and Petitioners presented written objections to the proposal. However, the objections primarily claimed that PUD-1630 was inconsistent with the ULI area and violated PlanOKC altogether. Aside from those written objections, however, Petitioners direct us to no evidence countering the evidence that PUD-1630 either met or "commits to meeting" relevant current requirements or recommendations for PlanOKC's LUTA map's ULI designation.

¶29 The evidentiary material that Petitioners presented in support of their contentions clearly failed to convince the trial court that in approving PUD-1630, City had acted unreasonably, arbitrarily, capriciously, "or in such a way as to constitute a violation of the constitutional guarantees of equal protection or due process." McConnell, 1985 OK 61 at ¶ 21. We find the trial court's decision supported by both the record and the law. The court did not abuse its discretion in denying Petitioners' request for a writ of mandamus. We reject Petitioners' claims of error on this issue and do not disturb the trial court's determination.

II. The Trial Court Properly Denied Motion to File a Second Amended Petition

¶30 Petitioners allege reversible error occurred when the trial court refused to grant their motion to file a "Second Amended Petition for a Writ of Mandamus and/or Prohibition" (second amended petition). Their argument is critically deficient, however, in that they claim only that the proposed amendment sought a writ requiring City:

[T]o follow the Statute mandating that the adopted long-range plan be followed (11 O.S. § 43-103 which is non-discretionary) and further instruct [City] to strike as void the Oklahoma City Code that is inconsistent with the Statute where it purports to allow the City to utilize the long-range plan as a tool only.[8]

 

These are the same provisions identified in Petitioners' first amended petition. The argument is the same argument that we have discussed and rejected above. The only new matter set forth in the proposed second amended petition is Petitioners' request that the court deem invalid the "joint defense agreements" (JDAs) between City and Kilpatrick;[9] however, on appeal Petitioners do not challenge the denial of their motion on this ground.

 

¶31 We find no abuse of discretion by the trial court in refusing to allow an amendment that simply reiterated the same allegations and arguments the court had already rejected. See Prough v. Edinger, 1993 OK 130, ¶ 9, 862 P.2d 71 (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962))(no abuse of discretion in refusal to allow request to amend based on "futility of amendment"). We presume Petitioners have abandoned a claim of error based on the refusal to allow amendment on grounds related to the JDAs.[10] Accordingly, we find no fault with the trial court's order denying the request to file a second amended petition.

III. Case Consolidation was Warranted and Proper

¶32 Petitioners' Proposition No. III asserts the trial court's alleged error in consolidating Petitioners' mandamus action with the injunction action that was filed by area residents to prevent enforcement of the rezoning ordinance. Petitioners argue, first, that because City's motion to consolidate was filed four days prior to Petitioners' filing their first amended petition, City's motion to consolidate could only have referred to Petitioners' original petition. They then claim that the first amended petition added a number of issues and allegations that rendered consolidation of the two cases inappropriate. This argument ignores the date of the trial court's order granting City's consolidation request, which was entered several months after Petitioners' first amended petition was filed. We presume the trial court entered an order responsive to the most recent petition on file in the case and reject Petitioners' claim of error on this ground.

¶33 Petitioners also contend that consolidation was improper because Petitioners' allegations against City encompassed more issues than the question of adequate notice, and because the two actions sought different forms of relief and presented different questions of law. Presuming, without finding, that Petitioners were somehow prejudiced by the consolidation, we again reject their argument.

¶34 Pursuant to 12 O.S.2011 § 2018(C), a trial court may consolidate pending actions "involving a common question of law or fact." "Consolidation is a procedural mechanism to enhance the efficiency of judicial process and its economy," and is a matter in which a trial court has "broad discretion." State v. One Thousand Two Hundred Sixty--Seven Dollars, 2006 OK 15, ¶ 15, 131 P.3d 116.

¶35 Here, both cases involve the same defendant/respondent, the same tract of land, the same property owner/developer, the same PUD and rezoning application, and the same approval process by City, i.e., the same basic core of facts. Both actions also had, as a primary issue of law, the adequacy of notice to affected residents. While it is true that this action sought mandamus and the other action sought an injunction, Petitioners' contention that the parties could not have pursued discovery due to the injunction case is without basis in law, as we discussed above. Presuming again that Petitioners were actually prejudiced by consolidation early in the case, however, we reject their argument and find that, based on the record presented, the trial court did not abuse its discretion in consolidating the cases.

IV. Allowing Intervention by the Rezoned Property's Owner/Developer was not an Abuse of Discretion

¶36 Petitioners' final proposition is that the trial court committed reversible error by allowing Kilpatrick to intervene in the case. They contend first that Kilpatrick lacked "standing" to intervene because it is a "private entity" rather than a governmental agency or an agent for City, and therefore lacked legal standing to defend against a writ of mandamus. This argument appears to be premised in Petitioners' reading of 12 O.S.2011 § 1451 as precluding a writ of mandamus from issuing against a "private entity," therefore precluding Kilpatrick from having "standing" to defend against a writ request. Petitioners cite no authority for this argument other than the statute itself, § 1451, which expressly provides that "mandamus may be issued . . . to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty. . . ." (Emphasis added). We reject Petitioners' contention on this issue.

¶37 Petitioners also contend that even if Kilpatrick had "standing," intervention was unnecessary because City could have adequately protected Kilpatrick's interests. We disagree. As City argues in its answer brief, although City and Kilpatrick had a "joint goal" of defending the validity of PUD-1630, the parties' respective interests are "not identical," in that City "has no interest in the Subject Property itself, whereas [Kilpatrick] is the owner of the Subject Property and has expended and will expend millions of dollars to develop" the property. Kilpatrick undisputedly owns the property at issue, initiated the rezoning process, plans to invest heavily in the property's further development, and therefore has a clear and present interest in defending an attack on the rezoning decision that occurred as a result of its application. As such, Kilpatrick is one who is "so situated that the disposition of the action may as a practical matter impair or impede" its ability to protect its interest. This is one of the definitions of a person entitled to "intervention of right" under 12 O.S.2011 § 2024(A), and the trial court correctly allowed the intervention to occur.

CONCLUSION

¶38 For the reasons set forth above, we reject Petitioners' arguments for reversal of the trial court's orders at issue herein. The court did not abuse its discretion in concluding that mandamus is not an appropriate or available remedy to address City's legislative decision rezoning the area in question, and the evidence does not otherwise support a claim that City acted unreasonably, arbitrarily, or capriciously. We further find the court did not abuse its discretion by allowing case consolidation and intervention of right by the property owner, Kilpatrick, nor did it err by refusing to allow Petitioners to file a second amended petition. Accordingly, the judgment is affirmed in all respects.

¶39 AFFIRMED. 

WISEMAN, C.J., and BARNES, J. (sitting by designation), concur.

FOOTNOTES

[1] Issues were raised and vigorously litigated in the trial court concerning the sufficiency of notice of the proposed rezoning to all affected landowners. The issues were resolved in favor of Kilpatrick prior to this appeal, and notice is not an issue here.

[2] PlanOKC was adopted by City after a lengthy information-gathering and planning process, for use in shaping City's future physical development, including zoning and land use. According to the PlanOKC website, https://www.okc.gov/departments/planning/comprehensive-plan, "PlanOKC is the manifestation of a common vision developed through years of analysis and input from Oklahoma City residents, business professionals, community stakeholders and local government officials."

[3] The trial court ultimately dismissed Case No. CV-2017-955 because each plaintiff had voluntarily dismissed the action without prejudice. The dismissals occurred after the court entered its order in favor of City and Kilpatrick on the issue of adequacy of the notice given to landowners of the PUD-1630 application.

[4] Section 43-103 provides that regulations be designed to accomplish any of a number of objectives, including, inter alia, reducing traffic congestion; securing public safety and promoting public health and the general welfare; providing adequate light and air; preventing overcrowding of land; promoting historical preservation; avoiding "undue concentration of population"; or facilitating "the adequate provision of transportation, water, sewerage, schools, parks" and the like.

[5] Section 59-3150.2 is found in Chapter 59 of the Municipal Code, under Article III, and specifically deals with City's Planning Commission. It states, in pertinent part:

3150.2. Powers. In general, the Planning Commission shall have such powers as may be necessary to enable it to fulfill its function, to promote municipal planning, and to carry out the purposes of the State statutes empowering the Commission to act. Specifically, the Planning Commission shall have the following powers:

A. Comprehensive Plan. To make, update and adopt a Comprehensive Plan for the physical development of the City. This may include any areas outside its boundaries that, in the Planning Commission's judgment, bear relation to the planning of the City. The Planning Commission may cooperate with other Planning Commissions and organizations in connection with planning for areas beyond the corporate limits of Oklahoma City.

[6] Brief in Chief at p. 10.

[7] In Gregory v. Bd. of County Comm'nrs of Rogers County, 1973 OK 101, 514 P.2d 667, the Court held that an appeal is not available from a zoning reclassification decision, because such decisions are legislative rather than quasi-judicial functions, and must be challenged by means of a request for injunction or mandamus. In 2004 the legislature enacted 11 O.S. § 43-109.1, which provides that any suit to challenge an action, decision, ruling, or order of a municipal governing body must be filed within 30 days from the challenged order. A similar provision is found at § 47-124, providing for judicial review of municipal actions "alleged to be arbitrary, unreasonable or capricious," by reason of which the action, "if enforced, will work an unnecessary hardship on or create substantial harm or loss to the complaining party."

[8] Petitioners' Brief in Chief at p. 11.

[9] In all other respects, the first amended petition and proposed second amended petition appear to be identical.

[10] Prior to their motion to file a second amended petition, Petitioners filed a motion in limine to prevent the court from considering any of City's or Kilpatrick's evidence due to City's alleged involvement in "unprincipled and Machiavellian collusion" with Kilpatrick and its counsel because of the JDA concerning this litigation. The court denied the motion in limine, finding that City and Kilpatrick had a common interest in defending the validity of PUD-1630 and the rezoning ordinance. Petitioners have not challenged this order on appeal.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2019 OK CIV APP 27, 441 P.3d 179, SUNDERLAND v. ZIMMERMAN
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 130, 862 P.2d 71, 64 OBJ 3094, Prough v. Edinger, Inc.
Discussed
 1947 OK 221, 187 P.2d 209, 199 Okla. 477, STATE HWY. COMM'N v. GREEN-BOOTS CONST. CO.
Discussed
 1997 OK 13, 935 P.2d 294, 68 OBJ 559, Clay v. Independent School District No. 1 of Tulsa County
Discussed
 1956 OK 19, 292 P.2d 417, DORRIS v. HAWK
Discussed
 1973 OK 101, 514 P.2d 667, GREGORY v. BOARD OF COUNTY COM'RS OF ROGERS COUNTY
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2006 OK 15, 131 P.3d 116, STATE v. ONE THOUSAND TWO HUNDRED SIXTY-SEVEN DOLLARS
Discussed
 2006 OK 27, 174 P.3d 559, MILLER DOLLARHIDE, P.C. v. TAL
Discussed
 1975 OK 106, 539 P.2d 740, UTILITY SUPPLY CO., INC. v. CITY OF BROKEN ARROW
Discussed
 1978 OK 163, 588 P.2d 567, KELLY v. CITY OF BETHANY
Discussed
 1982 OK 58, 645 P.2d 518, Farmer v. City of Sapulpa
Discussed
 1900 OK 45, 60 P. 95, 9 Okla. 677, TIBBITS v. MILLER
Discussed
 1985 OK 41, 701 P.2d 412, Mid-Continent Life Ins. Co. v. City of Oklahoma City
Discussed
 1985 OK 61, 704 P.2d 479, McConnell v. Town Clerk of Tipton
Discussed at Length
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 43-103, Purpose of Regulations - Comprehensive Plan
Discussed at Length
 11 O.S. 43-110, Planned Unit Developments
Cited
 11 O.S. 47-106, General Powers and Duties
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2024, Intervention
Cited
 12 O.S. 1451, Writ of Mandamus - Issued - Function
Discussed
 12 O.S. 2018, Joinder of Claims and Remedies
Cited
 12 O.S. 3224, Short Title and Scope of Code
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA